# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOTI, INC., a Canadian corporation,<br><br>        Plaintiff,<br>v.<br><br>IMPARTNER, INC., a Delaware corporation,<br><br>        Defendant. | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Case No.: 2:18-CV-295<br>Judge: Robert J. Shelby |

Before the court are two motions. Plaintiff SOTI moved for a temporary restraining order, asking the court to enjoin arbitration proceedings commenced by Defendant Impartner.[1] Impartner then filed a Motion to Compel Arbitration, asking the court to enforce an arbitration provision in a contract with SOTI.[2] For the reasons explained below, the court grants Impartner's Motion, and dismisses the case in favor of mandatory arbitration. SOTI's application for a temporary restraining order is denied.

## BACKGROUND

This dispute arises out of a contract between SOTI and Impartner for the sale of software. The central questions presented are whether the parties entered into a contract, and if so, whether an arbitration provision was incorporated. The facts surrounding the formation of the contractual relationship are complicated, but important to the issues presented. They are detailed here for that reason.

On June 28, 2016, Steve Oates, an employee at Impartner, emailed SOTI's procurement manager, Sean McKay, about pricing proposals for Impartner's relationship management

---

[1] Dkt. 4.

[2] Dkt. 20.

software.³ McKay responded on June 29, asking to delay discussing the proposal for a day.⁴ Oates explained that Impartner wanted to have an agreement for a sale of Impartner's software "signed by end of the quarter."⁵ Oates stated that certain pricing incentives were available only if a purchase order form was signed on or before June 30.⁶

McKay responded that completing the deal by June 30 would be "very difficult" because a purchase order would first need to be presented to SOTI's CEO for approval.⁷ Oates asked to "go as fast as we can," and suggested SOTI's legal team begin looking at a draft Agreement.⁸ Oates also requested McKay send him the "commercial considerations" SOTI needed, including pricing and terms.⁹ Later that day, Oates further proposed that McKay sign the Agreement supplied by Impartner, leaving the purchase order number blank, and return it to Impartner while SOTI worked "to turn around any redlines to the terms of use" and receive CEO approval.¹⁰ Oates stated that if the parties later were unable to agree on pricing and terms, Impartner would "tear up the order."¹¹ Oates sent McKay a letter stating that the Agreement "constitutes SOTI's commitment to the pricing, terms and conditions therein, pending CEO Approval on or before Tuesday July 5ᵗʰ 2016."¹² The letter provided that "[s]hould the CEO decline approval, the order is invalid and the signed Order Form will be shredded."¹³ McKay ultimately sent Oates a signed

---

³ Dkt. 4, Ex. 1, at 5.
⁴ *Id.*
⁵ *Id.* at 4.
⁶ *Id.* at 4–5.
⁷ *Id.* at 4.
⁸ *Id.*
⁹ *Id.*
¹⁰ *Id.* at 3.
¹¹ *Id.*
¹² Dkt. 19, Ex. 5.
¹³ *Id.*

Agreement on June 30 and stated he would be in touch the following week after the Agreement was approved by SOTI's CEO.[14]

The signed Agreement stated three times that Impartner's Terms of Use applied, and provided a URL to access the Terms.[15]  In its demand for arbitration, Impartner submitted Terms of Use that contain a provision titled "Arbitration," which states that "[a]ny controversy or claim arising out of or relating to this Agreement or the use of the Service shall be settled by arbitration."[16]

Following a mutually agreed extension of time for SOTI's CEO review, on July 7, McKay sent Oates "the signed agreement as discussed" and requested "a detailed invoice based on these numbers" so that McKay could create a purchase order.[17]  Oates thanked McKay and stated he would be in touch about the next steps and that Imparter was "looking forward to starting."[18]  That same day, Impartner's CEO stated in an email to other Impartner employees that he received a call from a SOTI employee stating that SOTI's CEO "has signed the final approval."[19]

On July 19, Impartner's accountant sent McKay an invoice "for set-up fees per contract signed 06-30-2016."[20]  After the accountant followed up twice in August and September, McKay responded that he would discuss the invoice with Oates.[21]

---

[14] Dkt. 4, Ex. 1, at 2.

[15] Dkt. 4, Ex. 2, at 7, 9, 10.

[16] Dkt. 4, Ex. 5, at 25.

[17] Dkt. 19, Ex. 7.

[18] *Id.*

[19] Dkt. 21, Ex. 2.

[20] Dkt. 19, Ex. 10, at 4.

[21] *Id.*

Meanwhile, in July and August, employees from SOTI and Impartner emailed each other several times about setting up a kickoff call and demonstration.[22] Employees from both companies also emailed about a presentation in which Impartner suggested SOTI include an abstract stating that SOTI has selected a new partner relationship management portal from Impartner.[23]

In September, McKay emailed Oates to raise concerns about a Statement of Work and its relation to the licensing terms.[24] In October, Mustafa Ebadi, who at the time was SOTI's vice president, emailed Oates and stated he "would still like to redo the contract once . . . our legal team has signed off on the terms [and] conditions."[25] Ebadi expressed his understanding from SOTI's legal team was that "they are not signing off on this contract."[26]

On January 20, 2017, a member of SOTI's legal team emailed two employees at Impartner and stated that the two companies' CEOs had spoken the day before and come to a "clear understanding" that "[t]he proposal dated June 30, 2016 expired on July 5, 2016" and that the invoice dated July 19, 2016 should be voided.[27]

Impartner submitted a demand for arbitration on March 5, 2018.[28] On April 9, SOTI initiated this action, seeking declaratory judgment that no contract exists between the parties[29] and issuance of a temporary restraining order enjoining arbitration.[30] Impartner filed a Motion to

---

[22] Dkt. 19, Ex. 8.
[23] Dkt. 19, Ex. 9.
[24] Dkt. 4, Ex. 9.
[25] Dkt. 4, Ex. 11.
[26] *Id.*
[27] Dkt. 21, Ex. 4.
[28] Dkt. 21, Ex. 5.
[29] Dkt. 2.
[30] Dkt. 4.

Compel Arbitration, asserting a valid contract exists that requires the parties to arbitrate.[31] SOTI represented in its Reply Memorandum that it is now seeking only a preliminary injunction and not a temporary restraining order.[32]

## LEGAL STANDARD

To show it is entitled to a temporary restraining order or preliminary injunction, SOTI must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."[33] "Because a preliminary injunction is an extraordinary remedy, [the movant's] right to relief must be clear and unequivocal."[34]

Impartner, as the party seeking to compel arbitration, "has the burden to show that . . . Arbitration Clauses exist and apply to" SOTI.[35] If Impartner meets that initial burden, SOTI "could attempt to rebut that showing with evidence establishing a genuine dispute as to whether the provisions apply."[36] The court may grant a motion to compel arbitration where "there are no genuine issues of material fact regarding the parties' agreement," giving the party resisting arbitration "the benefit of all reasonable doubts and inferences that may arise."[37]

---

[31] Dkt. 20.

[32] Dkt. 26 at 1.

[33] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted).

[34] *Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008) (citation omitted).

[35] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

[36] *Id.*

[37] *Id.* (citation omitted).

**ANALYSIS**

Both Impartner's Motion to Compel Arbitration and the first prong of the preliminary injunction analysis require the court to address whether the parties entered into a contract with an arbitration provision.

Before deciding whether a dispute is arbitrable, the court must first determine who should decide arbitrability—the court or an arbitrator.[38] In making this decision, the court looks to the language of the arbitration provision at issue. However, in this case, the parties dispute whether the arbitration provision is even incorporated into the signed Agreement. Thus, in order to reach the issue of whether the arbitration provision evinces the parties' intent to arbitrate arbitrability, the court must first address incorporation.

**I.     Incorporation**

SOTI argues the Terms of Use document that contains the arbitration provision is not incorporated into the Agreement for several reasons.

First, SOTI argues there is no evidence the URL in the Agreement contained the same Terms of Use—including an arbitration provision—that Impartner later provided in its demand for arbitration.

The Agreement references the Terms of Use three times and provides a URL: http://www.impartner.com/terms-of-use.aspx. In its Reply in support of the Motion to Compel Arbitration, Impartner submitted evidence by affidavit that the Terms of Use available at that URL on the date SOTI signed the Agreement contained the same arbitration provision as the Terms of Use that Impartner submitted in its demand for arbitration.[39] In contrast, SOTI has submitted no evidence that the Terms of Use available at the URL on the date it signed the

---

[38] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).
[39] Dkt. 28.

Agreement did not contain the same arbitration provision. Accordingly, no genuine issue of fact exists as to whether the Terms of Use referenced in the Agreement was the same document submitted in Impartner's demand for arbitration.

Second, SOTI argues the Agreement lacked sufficiently specific language to incorporate the Terms of Use by reference. "Incorporation by reference requires that the reference . . . be clear and unequivocal, and alert the non-drafting party that terms from another document are being incorporated."[40] SOTI argues the Agreement's references to the Terms of Use are references only to what a future contract would cover.

The Agreement includes three references to the Terms of Use. The first states that an "[a]greement to abide by the Services Terms of Use" is part of the requirements for the purchasing company, and it includes the URL to the Terms of Use.[41] The second reference states that "[a]ll licenses are subject to Terms of Use" and again provides the URL.[42] The third reference, which is almost directly above the signature line on the last page of the Agreement, states that "You agree to abide by Terms of Use for each Impartner licensed product."[43] These three references clearly and unequivocally incorporate the Terms of Use into the Agreement. There is no language in the references to the Terms of Use that supports an inference they were intended only as part of a future contract.

Third, SOTI argues it never specifically consented to the Terms of Use. However, SOTI has pointed to no facts that would create a genuine dispute on this issue. Impartner invited SOTI to propose changes to the Terms of Use if it disagreed with them. Had SOTI disagreed with the

---

[40] *Peterson & Simpson v. IHC Health Servs., Inc.*, 2009 UT 54, ¶ 15, 217 P.3d 716 (alteration in original) (citation omitted).

[41] Dkt. 4, Ex. 2, at 7.

[42] *Id.* at 9.

[43] *Id.* at 10.

Terms, it had the ability to refuse to sign the Agreement. Instead, SOTI raised no disagreement with the Terms and signed the Agreement incorporating the Terms without further negotiation. Thus, there is no genuine dispute as to SOTI's consent to the Terms of Use.

Fourth, SOTI argues the Terms of Use itself implies the parties intended the document to be a separate contract because the version Impartner emailed SOTI contains a separate signature block. However, the version of the Terms of Use that Impartner states was available at the URL does not contain a signature block. In any case, a signature block does not negate the clear and unequivocal language of incorporation in the Agreement. Thus, any signature block does not create a genuine dispute of material fact as to incorporation.

Given Impartner's showing that the Terms of Use contained the arbitration provision on the date SOTI signed the Agreement and the language of incorporation, the court concludes no genuine dispute of material fact exists as to whether the arbitration provision was incorporated into the Agreement.

SOTI concedes that if it did agree to the arbitration provision, it has agreed to arbitrate arbitrability and would need to present its remaining arguments to an arbitrator, not this court.[44] However, SOTI argues the arbitration provision is not binding because it is not part of a valid and enforceable contract. SOTI asserts the Agreement was not a valid contract because it did not contain or incorporate a Statement of Work, which SOTI argues is a material term.

## II. Valid and enforceable contract

The court is tasked with considering "only issues relating to the making and performance of the agreement to arbitrate," not the contract as a whole.[45] The Supreme Court applied this rule in *Prima Paint v. Flood & Conklin Manufacturing*, stating that because a claim of fraudulent

---

[44] Dkt. 26 at 1–2.

[45] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).

inducement implicated the contract generally and not just the arbitration provision, an arbitrator should decide the issue.[46] The Supreme Court reaffirmed this rule in *Buckeye Check Cashing v. Cardegna*, in which one party argued a contract was void because it violated state lending and consumer protection laws.[47] The Court held that challenge was "to the validity of the contract as a whole, and not specifically to the arbitration clause," and therefore must go to the arbitrator.[48]

The Tenth Circuit has also applied this rule. In *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, a party sought to have the court decide whether a contract was unenforceable because it lacked consideration.[49] The Tenth Circuit concluded that because the argument was directed toward the contract as a whole, it must be resolved by an arbitrator.[50]

The Supreme Court has distinguished this general rule from cases in which a party alleges it never signed the contract, lacked the authority to sign, or lacked the mental capacity to assent.[51] However, the facts of this case do not appear to fit within any of these exceptions. Rather, SOTI's argument that a contract lacks an essential term is similar in nature to the argument in *Cox* that the contract lacked consideration. The court recognizes that the holding of *Cox* was raised late in the hearing and that the parties did not brief its application to this case. However, it appears clear from *Cox* that binding case law mandates arbitration for SOTI's argument about a missing essential term.[52]

---

[46] *Id.*

[47] 546 U.S. 440, 443 (2006).

[48] *Id.* at 449.

[49] 835 F.3d 1195, 1209 (10th Cir. 2016).

[50] *Id.* at 1211.

[51] *Buckeye Check Cashing*, 546 U.S. at 444 n.1.

[52] In any case, even if I were to decide the issue of whether an essential term is missing from the Agreement, I would conclude the Statement of Work was not a material term and thus a valid contract existed that requires arbitration.

9

The issue of whether the Agreement lacks a material term attacks the contract as a whole, not just the arbitration provision. For this reason, the court concludes the issue of whether the Agreement contains all essential terms must be resolved by an arbitrator.

## CONCLUSION

Impartner's Motion to Compel Arbitration is GRANTED.[53] SOTI's Motion for Temporary Restraining Order is DENIED.[54] The Clerk of Court is ORDERED to close the case.

**SO ORDERED** this 7th day of June, 2018.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[53] Dkt. 20.

[54] Dkt. 4.